UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
JOHN BLOWERS,

                                *Plaintiff*,

           -against-

CAPRI CONSTRUCTION 426 LLC d/b/a CAPRI
ENTERPRISES, DAVID DiMEO, individually, and PIO
DiMEO, individually,

                                *Defendants*.

-----------------------------------------------------------------------x

**COMPLAINT AND
JURY DEMAND**

Civil Action No.:
1:25-CV-0172 (AMN/DJS)

Plaintiff, John Blowers ("Blowers" or "Plaintiff"), by and through his attorneys, Toporowski Law, PLLC, for a complaint against Defendants, Capri Construction 426 LLC d/b/a Capri Enterprises ("Capri"), David DiMeo, individually ("David"), and Pio DiMeo, individually ("Pio", and together with Capri and David, "Defendants"), alleges as follows:

## DESCRIPTION OF ACTION

1. This case arises out of Defendants' failure to compensate Plaintiff for his hours and/or labor worked as Defendants' employee from January 2023 through October 2024.

2. Defendants hired Plaintiff to establish and manage their federal contracting business, with a focus on Veterans Affairs ("VA") contracts for medical equipment and services, after an initial meeting at Rivers Casino in January 2023.

3. Throughout Plaintiff's employment by Defendants, Defendants intentionally and routinely violated the New York Labor Law ("NYLL"), the Federal Labor Standards Act ("FLSA"), as well as supporting labor regulations through systematic wage and hour violations.

4. Defendants intentionally failed to compensate Plaintiff for the hours worked and wages due by: (a) failing to provide compensation during an initial period from January 2023 to July 2023; (b) failing to pay promised 30% commissions on secured contracts worth over $6.35 million; (c) defaulting on agreed $350.00 weekly stipend payments; and (d) failing to provide overtime

1

compensation despite 40+ hour work weeks.

5.    Defendants intentionally failed to provide required employment and payroll notices or maintain records by: (1) operating without any written employment agreements; (2) making undocumented cash payments; (3) failing to provide wage statements or tax documentation; and (4) failing to maintain records of hours worked or compensation paid.

6.    Plaintiff has been severely damaged by Defendants' willful violations while they have been grossly and unjustly enriched through contracts Plaintiff secured including a $6.1 million contract, a $24,000.00 consulting contract, and over $200,000 in procurement contracts.

7.    Despite Plaintiff's successful procurement of valuable contracts and personal management of key projects, Defendants refused to compensate Plaintiff for wages due and hours worked.

8.    Specifically, Defendants ignored Plaintiff's demand letters and ultimately terminated his employment in October 2024 through email access suspension without notice or payment of substantial earned wages and/or commissions.

9.    Plaintiff learned of his termination second-hand from the VA who told him that Dave said Plaintiff was no longer employed by Capri.

10.    As a result of the foregoing, Plaintiff asserts claims and seeks damages for: (1) failure to pay minimum wages under FLSA; (2) failure to pay overtime wages under FLSA; (3) failure to pay minimum wages under NYLL; (4) failure to pay overtime wages under NYLL; (5) failure to provide wage notices under NYLL; (6) failure to provide wage statements under NYLL; (7) failure to maintain employment records under NYLL; (8) quantum meruit; and (9) unjust enrichment.

## **PARTIES**

11.    Plaintiff is an individual who, at all relevant times herein, resides within the jurisdiction of the District Court of the Northern District of New York, residing in Ballston Lake, New York

2

12019.

12.     Capri is a domestic limited liability company that maintains a principal place of business within the territorial jurisdiction of the District Court of the Northern District of New York, located at 101A LaFlamme Road, Middle Grove, New York 12850.

13.     David is an individual who, at all relevant times herein, resides within the jurisdiction of the District Court of the Northern District of New York, residing at 9 Morningside Drive, Ballston Lake, New York 12019.

14.     Pio is an individual who, at all relevant times herein, resides within the jurisdiction of the District Court of the Northern District of New York, residing at 9 Morningside Drive, Ballston Lake, New York 12019.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §§ 1331 & 1367 because Plaintiff's primary claims arise under the laws of the United States and all other claims are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

16.     Venue is proper in this Court, pursuant to 28 U.S.C. §§ 1391(b)(1)-(2) because Defendants reside or maintain a principal place of business within the Northern District of New York and a substantial part of the events or omissions giving rise to claims asserted herein occurred within the Northern District of New York.

## BACKGROUND AND FACTUAL ALLEGATIONS

### I.     Initial Relationship and Agreement (January 2023).

17.     In January 2023, Plaintiff met David while playing poker at Rivers Casino, where David solicited Plaintiff's assistance with Capri.

18.     Following that meeting, Capri pivoted from construction projects to procuring VA

contracts with Plaintiffs help.  Capri then sought out government contracts, including medical equipment procurement, healthcare facility services, and event management services.

19.    Plaintiff and David formed their business relationship without any written agreement governing: (1) employment terms and conditions; (2) compensation structure; (3) work expectations; and (4) record-keeping requirements.

20.    Defendants exercised control over Plaintiff's work from the outset by directing which business opportunities to pursue, requiring regular in-person meetings, controlling all payment terms and methods, and determining work priorities and deliverables.

**II.    Unpaid Work Period (January 2023 – July 2023).**

21.    During January 2023 to July 2023, Plaintiff performed a substantial amount of uncompensated work for Defendants including, but not limited to: (1) creating a "BD Opportunity Tracker" matrix for evaluating business opportunities; (2) analyzing VA spending patterns to identify target markets; (3) developing three distinct capabilities statements for procurement, construction, and consulting; (4) managing SAM.gov registration and compliance; and (5) establishing a relationship with Apex Accelerators for business development.

22.    Plaintiff's work commitment increased from several meetings per month in Q1 of 2023 to multiple meetings per week in Q2, yet Defendants failed to pay any wages, failed to maintain any records of hours worked, failed to provide any wage notices or statements, and failed to establish any formal employment policies.

**III.    First Success and Payment (July 2023).**

23.    In July 2023, Plaintiff secured the first successful VA contract for Defendants.

24.    In July 2023, Defendants verbally agreed to a 30% commission structure.

25.    Plaintiff requested and received a cash advance due to personal expenses.

26.    This final payment was made in cash without documentation and no wage statements

or tax documents were provided.

**IV.    Stipend Period (August 2023 – May 2024).**

27.    In August 2023, Plaintiff negotiated with Defendants a $350.00 per week stipend after explaining he needed to reduce other work commitments to focus on Capri.

28.    Initial payments were made in cash.

29.    In or around October or November 2023, payments transitioned to checks.

30.    A formal payroll system was never established.

31.    No wage statements or tax documentation were provided.

32.    During this period, Plaintiff sometimes worked in excess of forty (40) hours per week while: (1) successfully securing multiple contracts; (2) managing all federal contracting compliance; (3) maintaining vendor and VA relationships; (4) preparing bids and proposals; and (5) supporting contract execution and delivery.

**V.    Default Period (May 2024 – October 2024).**

33.    In or around May 2024 through October 2024, Defendants experienced financial difficulties.

34.    Notwithstanding, Plaintiff secured and managed multiple significant contracts including, but not limited to, a VA 100th Anniversary Event Planning contract ($24,000.00), a Paxman Scalp Cooling Systems contract ($6,100,000.00), and various medical equipment contracts like chiropractic tables and orthopedic equipment ($200,000).

35.    Also, Plaintiff personally managed the VA 100th Anniversary event when David walked off the project site.

36.    It was agreed Plaintiff would be paid a $3,500 in consultant pay in addition to his 30% share of the total contract price; both of which Defendants failed to pay.

37.    Plaintiff continued to work at times more than full-time hours without receiving

earned commissions, stipends, or any other wages.

38.     Later, Plaintiff discovered that Defendants defaulted on several federal loan obligations.

## VI.     Termination (October 2024).

39.     In October 2024, Defendants abruptly terminated Plaintiff by suspending his email access without notice.

40.     However, Defendants did not provide a formal termination letter or other documentation.

41.     In addition to his email access being terminated, Plaintiff was told by his VA point of contact that Dave said Plaintiff was no longer with the company.

42.     Defendants failed to pay outstanding commissions, stipends, or other wages as required and agreed to Plaintiff.

43.     Defendants withheld final wage statements and/or other tax documents.

## VII.     Violations Throughout Employment Relationship.

44.     Throughout the entire employment relationship, Defendants consistently violated federal and state labor laws in the following ways: (a) failing to pay minimum wage during the initial period; (b) never paying overtime despite Plaintiff working more than forty hour work weeks; (c) failing to provide required wage notices or statements; (d) failing to maintain employment records; (e) making irregular payments in cash without documentation; (f) failing to make provisions for payroll taxes or withholdings; and (g) exploiting Plaintiff's labor while withholding earned compensation.

**AS AND FOR A FIRST CAUSE OF ACTION**
**VIOLATION OF FAIR LABOR STANDARDS ACT**
**(FAILURE TO PAY MINIMUM WAGE)**

45.     Plaintiff repeats and realleges each and every allegation set forth in this Complaint as if fully set forth herein.

6

46.     At all relevant times herein, Defendants were Plaintiff's employer within the meaning of the FLSA as Defendants had the power to hire and fire Plaintiff, control the terms and conditions of his employment, and determine the rate and method of compensation, as evidenced by their initial hiring of Plaintiff in January 2023 at Rivers Casino, their direction of Plaintiff's work activities, their setting of commission rates, and their ultimate termination of Plaintiff in October 2024 through the suspension of his email access.

47.     From January 2023 through July 2023 (the "Initial Unpaid Period"), Defendants operated under a policy of failing and refusing to pay any wages whatsoever to Plaintiff while requiring him to perform substantial valuable services including: (1) creating a "BD Opportunity Tracker" matrix for evaluating business opportunities; (2) analyzing VA spending patterns; (3) developing three distinct capabilities statements for procurement, construction, and consulting; (4) managing SAM.gov registration and compliance; and (5) establishing relationships with APEX Accelerators for business development.

48.     Additionally, from May 2024 through October 2024 (the "Default Period"), during the Default Period, Defendants again willfully failed to pay Plaintiff any wages while Plaintiff continued to work full-time and successfully secured multiple significant contracts including the VA 100th Anniversary Event Planning contract worth $24,000.00 and the Paxman Scalp Cooling Systems contract worth $6,100,000.00.

49.     Defendants knowingly and willfully disregarded the provisions of the FLSA by: (1) initially having Plaintiff work without any compensation for over six months; (2) making undocumented cash payments without any wage statements or tax documentation; (3) defaulting on agreed stipend payments; and (4) refusing to pay earned commissions on successfully secured contracts.

50.     Defendants knew their failure to pay minimum wage would financially injure Plaintiff,

7

as evidenced by Plaintiff having to request a cash advance in July 2023 due to personal expenses and having to negotiate a weekly stipend in August 2023 because he needed to reduce other work commitments to focus on Capri.

51. Defendants' failure to pay minimum wage was willful and malicious, as demonstrated by their continued acceptance of Plaintiff's valuable services while experiencing financial difficulties and defaulting on federal loan obligations, yet still refusing to compensate Plaintiff for his work.

52. Defendants' failure was due to their conscious disregard of their duty, as evidenced by their complete failure to establish any formal payroll system, provide any wage documentation, or make any provisions for payroll taxes throughout the entire employment relationship from January 2023 through October 2024.

53. As a result, Plaintiff sustained severe injuries, including but not limited to lost wages during the Initial Unpaid Period and the Default Period, despite generating substantial revenue for Defendants through successful contract procurement.

54. Defendants' knowing and willful failure to pay minimum wage was the actual and proximate cause of Plaintiff's injuries.

55. Pursuant to the FLSA and supporting regulations, employers who fail to pay minimum wages are liable to employees in an amount including, without limitation: (1) their unpaid wages; (2) an additional equal amount as liquidated damages; (3) their reasonable attorneys' fees; and (4) the cost of the action.

56. Accordingly, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at trial including, but not limited to, statutory penalties, liquidated damages, attorneys' fees, costs, disbursements, interest, and such other legal and equitable relief as the Court deems equitable, just, and proper.

**AS AND FOR A SECOND CAUSE OF ACTION**
**VIOLATION OF FAIR LABOR STANDARDS ACT**
**(FAILURE TO PAY OVERTIME WAGES)**

57.    Plaintiff repeats and realleges each and every allegation set forth in this Complaint as if fully set forth herein.

58.    Defendants were Plaintiff's employer within the meaning of the FLSA, exercising control over Plaintiff's work by requiring regular in-person meetings, directing which business opportunities to pursue, controlling payment terms, and determining work priorities, ultimately culminating in their unilateral termination of Plaintiff through email access suspension in October 2024.

59.    Beginning in August 2023, Plaintiff sometimes worked in excess of forty (40) hours per week performing essential business functions including: (1) successfully securing multiple federal contracts; (2) managing all federal contracting compliance requirements; (3) maintaining vendor and VA relationships; (4) preparing bids and proposals; and (5) supporting contract execution and delivery. This intensive work schedule continued throughout October 2024.

60.    Defendants operated under a policy of paying Plaintiff only a $350.00 weekly stipend regardless of hours worked, first in cash and later by check, without any additional compensation for overtime hours worked in excess of forty hours per week.

61.    Despite Plaintiff's work schedule at times exceeding forty hours per week, Defendants failed to pay any overtime premium for hours worked beyond forty hours per week.  This failure was particularly egregious during the VA 100th Anniversary Event, which Plaintiff personally managed after David walked off the project site.

62.    Defendants knowingly disregarded FLSA overtime requirements while benefiting from Plaintiff's extended work hours, which directly resulted in securing valuable contracts including the Paxman Scalp Cooling Systems contract worth $6,100,000.00 and various medical equipment

9

contracts for chiropractic tables and orthopedic equipment.

63. Defendants knew their failure to pay overtime would financially injure Plaintiff, as evidenced by Plaintiff's need to negotiate even a basic stipend in August 2023 due to the extensive hours requirement by the position.

64. Defendants' failure to pay overtime was intentional and in bad faith, as demonstrated by their continued expansion of Plaintiff's responsibilities and work hours while maintaining only the basic $350.00 weekly stipend without any overtime premium.

65. Defendants' failure was particularly willful and malicious during the Default Period from May 2024 through October 2024, when they continued to demand Plaintiff's full-time-plus work commitment while failing to pay even the basic stipend, let alone overtime compensation.

66. Defendants' conscious disregard of their overtime obligations is evidenced by their failure to establish any system for tracking Plaintiff's hours despite knowing he worked well beyond forty hours per week managing complex federal contracts and events.

67. As a result, Plaintiff sustained severe financial injuries through the loss of substantial overtime compensation while working forty (40) plus hour weeks to secure and manage million-dollar contracts for Defendants' benefit.

68. Defendants' knowing failure to pay overtime was the direct cause of Plaintiff's injuries, as Plaintiff was forced to work excessive hours without proper compensation to maintain critical business operations and manage important contracts, including the VA 100th Anniversary Event.

69. Pursuant to the FLSA and supporting regulations, employers who fail to pay overtime wages are liable to employees in the amount including, without limitation, (1) their unpaid wages, (2) an additional equal amount as liquidated damages, (3) their reasonable attorneys' fees, and (4) the cost of the action.

70. Accordingly, Plaintiff demands judgment against Defendants, jointly and severally, in

10

an amount to be determined at trial including, but not limited to, statutory penalties, liquidated damages, attorneys' fees, costs, disbursements, interest, and such other legal and equitable relief as the Court deems equitable, just, and proper.

**AS AND FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF NEW YORK LABOR LAW**
**(FAILURE TO PAY MINIMUM WAGES)**

71.    Plaintiff repeats and realleges each and every allegation set forth in this Complaint as if fully set forth herein.

72.    Defendants were Plaintiff's employer within the meaning of the NYLL from January 2023 through October 2024, as evidenced by their power to hire Plaintiff (initially at Rivers Casino), direct his work activities (requiring regular meetings and controlling business opportunities), determine his compensation (setting the $350.00 weekly stipend and 30% commission rate), and ultimately terminate his employment (through email access suspension).

73.    During two distinct periods—the Initial Unpaid Period and through the Default Period—Defendants operated under a policy of failing to pay Plaintiff any wages whatsoever while requiring substantial work, in direct violation of New York minimum wage requirements.

74.    During the Initial Unpaid Period, Defendants willfully failed to pay any wages while requiring Plaintiff to: (a) create and maintain comprehensive business development tracking system; (b) conduct detailed analysis of VA spending patterns to identify market opportunities; (c) develop three separate capabilities statements; (d) manage complex federal registration requirements through SAM.gov; and (e) establish essential business relationships with Apex Accelerators.

75.    During the Default Period, Defendants again willfully violated minimum wage requirements while Plaintiff (a) secured the VA 100th Anniversary Event Planning contract, (b) obtained the Paxman Scalp Cooling Systems contract, (c) managed various medical equipment contracts, and (d) personally executed the VA 100th Anniversary event after David DiMeo's

abandonment of the project.

76. Defendants knew their failure to pay minimum wage would financially harm Plaintiff, as demonstrated by Plaintiff's need to request a cash advance in July 2023 and negotiate a modest weekly stipend in August 2023.

77. Defendants' failure to pay minimum wage was intentional and in bad faith.

78. Defendants' violations were willful and malicious, as they continued to accept and profit from Plaintiff's valuable services while experiencing financial difficulties and defaulting on federal loan obligations.

79. Defendants' conduct demonstrated conscious disregard of their NYLL obligations, as they did not maintain employment records, did not provide wage notices, and did not make provisions for payroll taxes throughout the entire employment relationship.

80. Plaintiff sustained severe financial injuries due to Defendants' minimum wage violations, particularly during the Default Period when he continued securing million-dollar contracts while not receiving compensation.

81. Defendants' willful failure to pay minimum wage directly caused Plaintiff's injuries, forcing him to work without compensation while generating substantial revenue for Defendants through successful contract procurement.

82. Pursuant to the NYLL and supporting regulations, employers who fail to pay minimum wages are liable to employees in an amount including, without limitation, (1) their unpaid wages, (2) an additional amount as liquidated damages, (3) their reasonable attorneys' fees, and (4) the cost of the action.

83. Accordingly, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at trial including, but not limited to, statutory penalties, liquidated damages, attorneys' fees, costs, disbursements, interest, and such other legal and equitable relief as the

Court deems equitable, just, and proper.

## AS AND FOR A FOURTH CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW
## (FAILURE TO PAY OVERTIME WAGES)

84.     Plaintiff repeats and realleges each and every allegation set forth in this Complaint as if fully set forth herein.

85.     From January 2023 through October 2024, Defendants maintained employer control over Plaintiff by directing which business opportunities to pursue, mandating regular in-person meetings, controlling payment terms and methods, setting work priorities and deliverables, maintaining authority to terminate Plaintiff's employment, which they ultimately exercised through email access suspension.

86.     Beginning in August 2023 through October 2024, Plaintiff worked in excess of forty (40) hours per week performing essential duties including (a) securing and managing multiple federal contracts, (b) maintaining comprehensive federal contracting compliance, (c) managing vendor and VA relationships, (d) preparing complex bids and proposals, (e) personally managing the VA 100th Anniversary event, and (f) overseeing contract execution and delivery.

87.     Defendants operated under a policy of compensating Plaintiff with only a $350 weekly stipend regardless of hours worked, initially paying in cash and later by check, without any overtime premium for hours worked beyond forty per week.

88.     Despite Plaintiff's 40+ hour work weeks, Defendants willfully failed to pay any overtime premium while requiring Plaintiff to secure the Paxman Scalp Cooling Systems, manage the VA 100th Anniversary Event Planning contract, oversee various medical equipment contracts, handle all federal contracting compliance, and maintain critical business relationships.

89.     Defendants knowingly disregarded NYLL overtime requirements while benefiting from Plaintiff's extended work hours, particularly during the Default Period when they failed to pay

even the basic stipend while demanding continued full-time-plus work.

90.     Defendants knew their failure to pay overtime violated NYLL requirements as evidence by their conscious decision to maintain only a flat weekly stipend despite 40+ hour work weeks, their failure to establish any system for tracking overtime hours, their practice of making undocumented payments, their complete failure to provide any wage statements or tax documentation.

91.     Defendants' failure to pay overtime was intentional and in bad faith, demonstrated by their increasing demands on Plaintiff's time while maintaining the same inadequate compensation structure.

92.     Defendants' violations were willful and malicious, as they continued to expand Plaintiff's responsibilities and work hours while experiencing financial difficulties and defaulting on federal obligations.

93.     Defendants showed conscious disregard of their NYLL overtime obligations because they never established a formal payroll system, failed to track or document overtime hours, made irregular cash payments without documentation, and refused to provide any wage statements or tax documents.

94.     Plaintiff sustained severe financial injuries through lost overtime compensation while working excessive hours to secure and manage million-dollar contracts for Defendants' benefit.

95.     Defendants' failure to pay overtime directly caused Plaintiff's injuries, as he was required to work excessive hours without proper compensation to maintain critical business operations and manage important contracts.

96.     Pursuant to the NYLL and supporting regulations, employers who fail to pay overtime wages are liable to employees in an amount including, but not limited to, (1) their unpaid wages, (2) an additional equal amount as liquidated damages, (3) their reasonable attorneys' fees, and (4) the cost of the action.

14

97.     Accordingly, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at trial including, without limitation, statutory penalties, liquidated damages, attorneys' fees, costs, disbursements, interest, and such other legal and equitable relief as the Court deems equitable, just, and proper.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK LABOR LAW**
**(FAILURE TO PROVIDE WAGE NOTICE)**

98.     Plaintiff repeats and realleges each and every allegation set forth in this Complaint as if fully set forth herein.

99.     From January 2023 through October 2024, Defendants were Plaintiff's employer within the meaning of the NYLL.

100.    Throughout the entire employment relationship, Defendants operated under a policy of failing to provide any required employment documentation, as evidence by the complete absence of written employment agreements, no formal documentation of the 30% commission structure agreed to in July 2023, no written confirmation of the $350 weekly stipend arrangement from August 2023, the lack of any formal termination notice in October 2024.

101.    Defendants failed to provide any written notice of: (a) the agreed-upon 30% commission rate for secured contracts, (b) the $350.00 weekly stipend payment structure, (c) the shift from cash payments to check payments, (d) the designated pay days for wage payments, (e) Defendants' complete business name and operating address, (f) any allowances or deductions from wages, and (g) any information about overtime rates or policies despite 40+ hour work weeks.

102.    Defendants failed to provide these required notices at Plaintiff's initial hiring in January 2023 and during significant changes to compensation structure, including the implementation of the commission structure in July 2023, the establishment of the weekly stipend in August 2023, the transition from cash to check payments, and the Default Period beginning May 2024.

15

103.    Defendants knowingly violated NYLL notice requirements while maintaining irregular payment practices including initial uncompensated work from January to July 2023, undocumented cash payments without any written terms, transition to checks without formal documentation, and complete cessation of payments during the Default Period.

104.    Their failure to provide wage notices was intentional, as demonstrated by their conscious decision to operate without any formal payroll system or employment documentation throughout the relationship.

105.    Defendants' violations were willful and malicious, continuing even after securing significant contracts including the $6,100,000.00 Paxman Scalp Cooling Systems contract, showing their ability but unwillingness to implement proper employment practices.

106.    Their failure stemmed from conscious disregard of their obligations, as they maintained sophisticated federal contracting operations while completely neglecting basic employment documentation requirements.

107.    Plaintiff suffered severe injury from these violations, being left without any documentation of his employment terms and conditions, his agreed-upon commission structure, his weekly stipend arrangement, his overtime rates and policies, and his ultimate termination.

108.    Defendants' failure to provide required notices directly caused Plaintiff's injuries by (a) leaving him without proof of employment terms, (b) creating uncertainty about payment obligations, (c) hampering his ability to track and claim earned wages, and (d) complicating his tax reporting obligations.

109.    Pursuant to NYLL and supporting regulations, employers who fail to provide wage notices are liable in an amount including, without limitation, (1) two hundred fifty dollars and 00/100 ($250.00) for each workday the violation persisted, up to five thousand dollars and 00/100 ($5,000.00), (2) reasonable attorneys' fees, (3) prejudgment interest, and (4) the costs of the action.

110.    Accordingly, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at trial including, but not limited to, statutory penalties, liquidated damages, attorneys' fees, costs, disbursements, interest, and such other legal and equitable relief as the Court deems equitable, just, and proper.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK LABOR LAW**
**(FAILURE TO PROVIDE WAGE STATEMENTS)**

111.    Plaintiff repeats and realleges each and every allegation set forth in this Complaint as if fully set forth herein.

112.    From January 2023 through October 2024, Defendants employed Plaintiff while initially operating with no compensation system whatsoever, later making undocumented cash payments, subsequently transitioning to checks without proper documentation, maintaining a $350.00 weekly stipend arrangement without formal payroll, promising but failing to document a 30% commission structure.

113.    Throughout the entire employment relationship, Defendants operated under a policy of failing to provide any wage statements or documentation regarding hours worked, including 40+ hour work weeks, regular rate of pay, commission calculations on secured contracts, basis for stipend payments, overtime calculations, and any deductions from wages.

114.    Defendants failed to provide wage statements during critical periods including the Initial Unpaid Period, the cash payment period, the stipend period, the Default Period, and upon Plaintiff's termination in October 2024.

115.    Defendants knowingly violated NYLL wage statements requirements while securing contracts worth over $6.1 million, managing federal contracting compliance, maintaining vendor relationships, and operating substantial business operations.

116.    Defendants knew their failure would harm Plaintiff, particularly when making

17

undocumented cash payments, failing to document commission payments, defaulting on stipend payments, and not providing any documentation for tax purposes.

117.    Their failure was intentional, as shown by (a) their sophisticated business operations contrasting with complete lack of payroll systems, (b) their ability to maintain federal contract documentation while ignoring wage documentation, and (c) their continued non-compliance even after securing major contracts.

118.    Defendants' violations were willful, continuing even after transitioning from cash to check payments, establishing the stipend arrangement, securing significant government contracts, and multiple successful business operations.

119.    Defendants' failure reflected conscious disregard, as they maintained complex federal contracting operations, detailed contract documentation, government compliance systems, yet completely neglected basic wage statement requirements.

120.    Plaintiff suffered severe injuries through (1) inability to verify proper payment of wages, (2) lack of documentation for tax purposes, (3) no records of hours worked or overtime, and (4) missing commission payment documentation.

121.    These failures directly caused Plaintiff's injuries because Plaintiff is prevented from accurate wage tracking, Plaintiff's tax reporting has been complicated, Plaintiff's ability to prove wage claims has been hindered, and Plaintiff's certainty around earned commissions has been compromised.

122.    Pursuant to NYLL and supporting regulations, employers who fail to provide wage statements are liable in an amount including, without limitation, (1) two hundred fifty dollars and 00/100 ($250.00) for each workday the violation persisted, up to five thousand dollars and 00/100 ($5,000.00), (2) reasonable attorneys' fees, (3) prejudgment interest, and (4) the costs of the action.

123.    Accordingly, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial including, but not limited to, statutory penalties, liquidated

damages, attorneys' fees, costs, disbursements, interest, and such other legal and equitable relief as the Court deems equitable, just, and proper.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK LABOR LAW**
**(FAILURE TO KEEP RECORDS)**

124.     Plaintiff repeats and realleges each and every allegation set forth in this Complaint as if fully set forth herein.

125.     Throughout the employment relationship from January 2023 through October 2024, Defendants employed Plaintiff while operating without any formal payroll system, making undocumented cash payments, failing to track hours worked, including 40+ hour weeks, not maintaining records of commission calculations, and not providing documentation of the $350.00 weekly stipend arrangement.

126.     Defendants systematically failed to establish, maintain, or preserve essential employment records including (a) written employment agreements, (b) documentation of the 30% commission structure agreed to in July 2023, (c) records of hours worked on federal contracts, (d) documentation of successful contract procurement worth $6.35 million, (e) records of cash payments and subsequent check payments, and (f) documentation of the transition from unpaid to paid status.

127.     Defendants failed to maintain any records to document the Initial Unpaid Period, the cash advance provided in July 2023, the stipend period, the Default Period, and Plaintiff's ultimate termination in October 2024.

128.     Defendants intentionally failed to maintain records while requiring Plaintiff to: (a) create and maintain the "BD Opportunity Tracker" matrix, (b) manage SAM.gov registration and compliance, (c) document VA spending patterns, (d) prepare federal contract bids and proposals, and (e) maintain vendor and VA relationships.

129.     Defendants knowingly violated NYLL record-keeping requirements while operating a

sophisticated federal contracting business, managing multiple government contracts, maintaining federal compliance documentation, and tracking complex procurement processes.

130. Defendants knew their failure to maintain records would harm Plaintiff, particularly during the transition from unpaid to commissioned work, the establishment of the weekly stipend, the Default Period when payments ceased, and the abrupt termination through email access suspension.

131. Their failure was intentional and in bad faith, as demonstrated by their ability to maintain complex federal contract records, their sophisticated business operations, their tracking of substantial contract procurement, yet their complete neglect of basic employment records.

132. Defendants' violations were willful, continuing even after securing the VA 100th Anniversary Event contract, obtaining the Paxman Scalp Cooling Systems contract, managing various medical equipment contracts, and establishing significant government contracting operations.

133. Their failure stemmed from conscious disregard, as they maintained sophisticated federal contracting documentation, required Plaintiff to track business opportunities, demanded compliance with government regulations, yet completely ignored employment record requirements.

134. Plaintiff suffered severe injuries through: (a) inability to prove hours worked, (b) lack of commission payment documentation, (c) missing wage payment records, and (d) no documentation of employment terms.

135. These failures directly caused Plaintiff's injuries by: (1) preventing accurate wage calculations, (b) complicating tax reporting, (c) hindering ability to prove wage claims, and (d) creating uncertainty about earned compensation.

136. Accordingly, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at trial including, but not limited to, statutory penalties, liquidated damages, attorneys' fees, costs, disbursements, interest, and such other legal and equitable relief as the

Court deems equitable, just, and proper.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (QUANTUM MERUIT)

137.    Plaintiff repeats and realleges each and every allegation set forth in this Complaint as if fully set forth herein.

138.    Plaintiff expended substantial time, labor, and resources in good faith for Defendants' benefit by: (1) creating and maintaining the "BD Opportunity Tracker" matrix; (2) analyzing VA spending patterns to identify target markets; (3) developing three distinct capabilities statements; (4) managing SAM.gov registration and compliance; (5) establishing relationships with Apex Accelerators; (6) working 40+ hour weeks to secure and manage contracts; (7) personally managing the VA 100th Anniversary event; (8) maintaining federal contracting compliance; and (9) preparing bids and proposals.

139.    Defendants accepted and benefited from Plaintiff's work as evidenced by: (a) successfully secured VA contracts, (b) the $24,000.00 VA 100th Anniversary Event Planning contract, (c) the $6,100,000.00 Paxman Scalp Cooling Systems contract, (d) various medical equipment contracts for chiropractic tables and orthopedic equipment, and (e) ongoing business operations and federal contract compliance.

140.    Plaintiff maintained a reasonable expectation of payment based on the verbal agreement to a 30% commission structure in July 2023, the negotiated $350.00 weekly stipend arrangement from August 2023, industry standards for federal contracting work, the substantial value of secured contracts, and the extensive hours worked maintaining business operations.

141.    The value of Plaintiff's services is clear.  Plaintiff successfully secured contracts worth $6.35 million, managed complex federal contracting compliance, worked 40+ hour work weeks, personally managed key events, and maintained critical business relationships.

142.    By virtue of these services, Plaintiff is entitled to compensation for: (1) unpaid work

21

during the Initial Unpaid Period, (2) unpaid commissions on successfully secured contracts, (3) unpaid wages during the Default Period, (4) overtime compensation for 40+ hour work weeks, and (5) the reasonable value of personally managed abandoned projects.

143.    Accordingly, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at trial including, but not limited to, statutory penalties, liquidated damages, attorneys' fees, costs, disbursements, interest, and such other legal and equitable relief as the Court deems equitable, just, and proper.

## AS AND FOR A NINTH CAUSE OF ACTION
### (UNJUST ENRICHMENT)

144.    Plaintiff repeats and realleges each and every allegation set forth in this Complaint as if fully set forth herein.

145.    Plaintiff conferred substantial benefits on Defendants through (1) securing $6.35 million in federal contracts, (2) creating essential business development infrastructure—including: (a) the "BD Opportunity Tracker" matrix, (b) three distinct capabilities statements, and (c) VA spending pattern analysis, (3) establishing and maintaining federal compliance—through (a) SAM.gov registration and management, (b) vendor relationship management, and (c) contract compliance oversight—, and (4) working 40+ hour weeks to maintain business operations.

146.    Defendants received and retained significant benefits from Plaintiff's work including the VA 100th Anniversary Event Planning contract ($24,000.00), the Paxman Scalp Cooling Systems contract ($6,100,000.00), various medical equipment contracts, established federal contracting infrastructure, ongoing business relationships with vendors, and successful contract execution and delivery.

147.    Defendants failed to compensate Plaintiff for these benefits by: (a) providing no compensation during the Initial Unpaid Period (January–July 2023), (b) failing to pay promised 30% commissions on secured contracts, (c) defaulting on the $350.00 weekly stipend payments, (d)

22

providing no overtime compensation for 40+ hour weeks, and (e) withholding all compensation during the Default Period (May–October 2024).

148.    Defendants did not have justification for their failure to compensate Plaintiff as they were actively profiting from Plaintiff's secured contracts, they continued to accept Plaintiff's services during financial difficulties, they maintained operations using Plaintiff's established systems, they benefited from Plaintiff's personal management of abandoned projects, and they terminated Plaintiff without compensation for successful contracts.

149.    Defendants were unjustly enriched through (1) millions in secured contract revenue, (2) established federal contracting infrastructure, (3) maintained business relationships, (4) successful contract execution, and (5) ongoing business operations.

150.    It would be inequitable to allow Defendants to retain these benefits because they did not provide compensation for initial development work, they failed to pay promised commissions on successful contracts, they defaulted on agreed stipend payments, they exploited Plaintiff's labor during financial difficulties, and they terminated Plaintiff while retaining all benefits of his work.

151.    Allowing Defendants to retain these benefits would contravene principles of equity as Defendants (a) knowingly accepted Plaintiff's valuable services, (b) made promises of compensation they failed to honor, (c) continued demanding work while defaulting on payments, (d) terminated Plaintiff to avoid payment obligations, and (e) retained all business benefits while not providing compensation.

152.    By virtue of the foregoing, Defendants have been unjustly enriched by revenue from secured contracts worth $6.35 million, established business infrastructure and systems, maintained federal contracting compliance, ongoing business relationships and operations, and successfully executed contracts and events.

153.    Accordingly, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at trial including, but not limited to, statutory penalties, liquidated damages, attorneys' fees, costs, disbursements, interest, and such other legal and equitable relief as the Court deems just and proper.

**WHEREFORE**, Plaintiff respectfully requests that the Court issue an Order and/or Judgment as follows:

1. Awarding compensatory damages to Plaintiff including: (a) unpaid wages for the initial work period (January–July 2023), (b) unpaid stipend payments during the Default Period (May–October 2024); (c) overtime compensation for 40+ hour work weeks; (d) unpaid minimum wages; (e) compensation for personally managing abandoned projects, and (f) promised 30% commissions on successfully secured contracts, including:

    a.  VA 100th Anniversary Event Planning contract ($24,000.00);

    b.  Paxman Scalp Cooling Systems contract ($6,100,000.00); and

    c.  Various medical equipment contracts ($200,000).

2. Awarding Plaintiff all penalties available under applicable laws, including (a) NYLL statutory penalties for failure to provide wage notices, (b) NYLL statutory penalties for failure to provide wage statements, (c) NYLL statutory penalties for failure to maintain records, (d) FLSA liquidated damages, and (e) NYLL liquidated damages.

3. Awarding Plaintiff costs of this action including expert fees for wage and hour calculations, expert fees for damages calculations, costs of prosecuting this action, disbursements, and filing fees.

4. Awarding Plaintiffs' attorneys' fees pursuant to the FLSA, the NYLL, as justified by Defendants' willful violations and as necessary to make Plaintiff whole.

5. Awarding Plaintiff: (a) pre-judgment interest on all unpaid wages, (b) pre-judgment interest on unpaid commissions, (c) pre-judgment interest on unpaid overtime, (d) post-judgment interest as provided by law, and (e) interest on all liquidated damages.

6. Awarding such other relief as this Court deems proper, just, and equitable.

Dated:  February 6, 2025
        Albany, New York

**TOPOROWSKI LAW, PLLC**

Matthew A. Toporowski, Esq.
Bar Roll #: 520835
*Attorneys for Plaintiff John Blowers*
P.O. Box 7271
Albany, New York 12224
Tel.: (845) 532-3512
*Matt@ToporowskiLaw.com*