UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JOHN BLOWERS,

Plaintiff,

v.

1:25-cv-00172 (AMN/PJE)

CAPRI CONSTRUCTION 426 LLC *d/b/a* CAPRI
ENTERPRISES, DAVID DIMEO, *individually,* and
PIO DIMEO, *individually*,

Defendants.

---

APPEARANCES:                          OF COUNSEL:

**TOPOROWSKI LAW, PLLC**              **MATTHEW A. TOPOROWSKI,**
P.O. Box 7271                         **ESQ.**
Albany, New York 12224
*Attorneys for Plaintiff*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.     INTRODUCTION

On February 6, 2025, plaintiff John Blowers ("Plaintiff") commenced this action against

defendants Capri Construction 426 LLC d/b/a Capri Enterprises ("Capri"), David DiMeo

("David"), and Pio DiMeo (collectively, "Defendants"), alleging violations of the federal Fair

Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and New York state law.  Dkt. No. 1

("Complaint").  Presently before the Court is Plaintiff's motion for a default judgment under Rule

55(b) of the Federal Rules of Civil Procedure.  Dkt. No. 8 ("Motion").

For the reasons set forth below, the Court denies the Motion and dismisses the Complaint.

1

## II.     BACKGROUND

### A.  Parties

Plaintiff is an individual who resides in Ballston Lake, New York.  Dkt. No. 1 at ¶ 11. Defendants David and Pio DiMeo are individuals who also reside in Ballston Lake.  *Id.* at ¶¶ 13-14.  Capri is alleged to be an entity organized under New York state law and with a principal place of business in Middle Grove, New York.  *Id.* at ¶ 12.

### B.  Plaintiff's Factual Allegations

"In January 2023, Plaintiff met David while playing poker at Rivers Casino, where David solicited Plaintiff's assistance with Capri."  *Id.* at ¶ 17.  "Plaintiff and David formed their business relationship without any written agreement[.]"  *Id.* at ¶ 19.  Plaintiff alleges that he was hired "to establish and manage their federal contracting business[.]"  *Id.* at ¶ 2.

From January 2023 to July 2023, Plaintiff generally alleges that he:

> [P]erformed a substantial amount of uncompensated work for Defendants including, but not limited to: (1) creating a "BD Opportunity Tracker" matrix for evaluating business opportunities; (2) analyzing [potential client] spending patterns to identify target markets; (3) developing three distinct capabilities statements for procurement, construction, and consulting; (4) managing [website] registration and compliance; and (5) establishing a relationship with Apex Accelerators for business development.

*Id.* at ¶ 21.  Plaintiff further alleges that his "work commitment increased from several meetings per month in Q1 of 2023 to multiple meetings per week in Q2" of 2023.  *Id.* at ¶ 22.

In July 2023, "Plaintiff secured the first successful [ ] contract[;]" "verbally agreed to a 30% commission structure;" and "requested and received a cash advance due to personal expenses."  *Id.* at ¶¶ 23-25.

In August 2023, Plaintiff "negotiated" "a $350.00 per week stipend after explaining he needed to reduce other work commitments to focus on Capri."  *Id.* at ¶ 27.

From August 2023 to May 2024, "Plaintiff sometimes worked in excess of forty (40) hours per week while: (1) successfully securing multiple contracts; (2) managing all [ ] contracting compliance; (3) maintaining vendor and [client] relationships; (4) preparing bids and proposals; and (5) supporting contract execution and delivery." *Id.* at ¶ 32.

From May 2024 through October 2024, "Plaintiff secured and managed multiple significant contracts[.]" *Id.* at ¶ 34. With respect to a $24,000 event planning contract in May 2024, "[i]t was agreed Plaintiff would be paid a $3,500 in consultant pay [sic] in addition to his 30% share of the total contract price[.]" *Id.* at ¶ 36; *see also* Dkt. No. 8-1 at ¶¶ 9-10. During these months, "Plaintiff continued to work at times more than full-time hours without receiving earned commissions, stipends, or any other wages." Dkt. No. 1 at ¶ 37. Plaintiff also alleges that Defendants "experienced financial difficulties" around this time. *Id.* at ¶ 33.

In October 2024, "Defendants abruptly terminated Plaintiff by suspending his email access without notice" and "failed to pay outstanding commissions, stipends, or other wages as required and agreed to Plaintiff." *Id.* at ¶¶ 39, 42.

### C. Plaintiff's Factual Affidavit

Plaintiff submits a factual affidavit in support of the Motion, in which he states that from January 2023 through March 2023, "[d]uring an average month, I was asked to produce work which required 15-20 hours of effort." Dkt. No. 8-1 at ¶ 7.

From April 2023 through July 2023, Plaintiff states that " [d]uring an average month, I was asked to produce work which required 40-60 hours of effort." *Id.* at ¶ 8.

From early August 2023 through March 2024, Plaintiff states that "**[d]uring an average month, I was asked to produce work which required 10-20 hours of overtime per month.**" *Id.* at ¶ 13.

After March 2024, according to Plaintiff:

[ ]  In April and May 2024, I secured a deal to perform event planning for [the client] . . . . This involved significant additional effort to manage six subcontractors, attend multiple planning sessions – onsite and virtual – and manage the 4 days onsite for the event, as well as conduct post event meetings with the client.  **During this period I worked 30 hours of overtime per month**. . . .

[ ]  In June 2024, I secured a deal to supply scalp cooling equipment nationally for the [client].  This contract . . . required substantial effort to finalize the deal, meet with various [client] officials, secure the first order (for $1,161,000.00 for 43 systems and supplies) and deliver on this order (from a UK manufacturer, requiring customs clearance on both sides of the ocean, confirm delivery at 43 different locations, then invoice and get paid by the [client]).  **This required 40 hours of overtime per month from June 2024 through September 2024.**

*Id.* at ¶¶ 14-15.

Plaintiff also attaches "scorecards for my work for Defendant that illustrate my productivity bidding on and winning contracts and their value[.]"  *Id.* at ¶ 30.  These documents list only Capri and indicate that from January 2023 through March 2024, Plaintiff obtained two contracts, one valued at $40,000 in July 2023 and one valued at $28,995 in September 2023.  *See, e.g.,* Dkt. No. 8-4 at 2, 4.[1]  Plaintiff does not contend that he is owed any unpaid commission for these two contracts.  *See generally* Dkt. No. 1 at ¶¶ 23-29; Dkt. No. 8-1 at ¶¶ 7-10.  The documents submitted by Plaintiff further indicate that he obtained eight additional contracts between April 2024 and June 2024.  Dkt. No. 8-4 at 5.  Plaintiff seeks unpaid commissions for these final eight contracts, plus additional "consultant pay" for one of these contracts.  Dkt. No. 8-1 at ¶¶ 9-10; Dkt. No. 1 at ¶¶ 33-36, 42.

### D.  Plaintiff's Legal Claims

Plaintiff asserts two claims under the FLSA, for failure to pay minimum and overtime

---

[1] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

wages. Dkt. No. 1 at ¶¶ 45-70. Plaintiff also asserts seven claims under New York state law. *Id.* at ¶¶ 71-153. According to the affidavit submitted by Plaintiff, his damages total "$493,083.56, plus interest." Dkt. No. 8-1 at ¶ 45 (footnote omitted).

### E.  Procedural History

Plaintiff commenced this action on February 6, 2025. Dkt. No. 1. Defendants David and Pio DiMeo were served on February 18, 2025, Dkt. No. 4, and Capri was served that same month, Dkt. No. 5. To date, no Defendant has appeared or responded to the Complaint. *See generally* Docket Sheet.

On March 24, 2025, Plaintiff filed a request for the entry of default pursuant to Rule 55(a) of the Federal Rule of Civil Procedure, a request which the Clerk of Court subsequently granted. Dkt. Nos. 6-7. On April 11, 2025, Plaintiff filed the Motion, requesting the entry of a default judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure. Dkt. No. 8.

## III.    STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure "provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). The first step is governed by Rule 55(a), which provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." *Id.* (quoting Fed. R. Civ. P. 55(a)); *see also* N.D.N.Y. L.R. 55.1 (setting forth affidavit requirements). Entry of a default "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Mickalis*, 645 F.3d at 128. The second step "requires the plaintiff to seek a judgment

by default under Rule 55(b)." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 505 (2d Cir. 2011). Entry of a default judgment "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled[.]" *Mickalis*, 645 F.3d at 128. A default judgment "ordinarily must be entered by the district judge, rather than by the clerk of court, except in certain circumstances[.]" *Id.*; *see also* N.D.N.Y. L.R. 55.2 (setting forth requirements for requesting a default judgment).

"Before entering a default judgment, the court 'must ensure that (1) jurisdictional requirements are satisfied, (2) the plaintiff took all the required procedural steps in moving for [a] default judgment, and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law.'" *Windward Bora, LLC v. Brown*, No. 21-cv-03147, 2022 WL 875100, at *2 (E.D.N.Y. Mar. 24, 2022) (alteration in original) (quoting *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-cv-6722, 2020 WL 1694356, at *4 (E.D.N.Y. Apr. 7, 2020)). Additionally, "[t]here must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 233 (2d Cir. 2012) (citations omitted). When evaluating a request for a default judgment, a "district court is empowered under Rule 55(b)(2), in the exercise of its discretion, to 'conduct hearings or make referrals' as may be necessary, *inter alia*, to determine the amount of damages or establish the truth of the plaintiff's allegations." *Mickalis*, 645 F.3d at 129 (quoting Fed. R. Civ. P. 55(b)(2)(B)-(C)).

While a court may enter a default judgment if the requisite standard is satisfied, the Second Circuit has cautioned that default judgments "are generally disfavored and are reserved for rare

occasions[.]" *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "Because we have 'a strong preference for resolving disputes on the merits,' and because 'a default judgment is the most severe sanction which the court may apply,' . . . we have characterized a district court's discretion in proceeding under Rule 55 as 'circumscribed.'" *Mickalis*, 645 F.3d at 129 (first quoting *Green*, 420 F.3d at 104; then quoting *Enron*, 10 F.3d at 95; and then citing *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)).

## IV.    DISCUSSION

### A.  Jurisdictional Requirements

The Court first addresses its jurisdiction over this matter. While a "plaintiff has the burden to establish jurisdiction, a federal court has an independent obligation to determine whether subject-matter jurisdiction exists 'even in the absence of a challenge from any party.'" *Wilmington Sav. Fund Soc'y, FSB as tr. of Aspen Holdings Tr. v. Fernandez*, 712 F. Supp. 3d 324, 330 (E.D.N.Y. 2024) (quoting *Chapman v. U.S. Dep't of Just.*, 558 F. Supp. 3d 45, 48 (E.D.N.Y. 2021)). Federal question jurisdiction exists over Plaintiff's FLSA claims, 28 U.S.C. § 1331, and supplemental jurisdiction exists over Plaintiff's state law claims, 28 U.S.C. § 1367. The Court has personal jurisdiction over Defendants, who are alleged to reside within the Northern District of New York and who were served here. Dkt. No. 1 at ¶¶ 12-14; Dkt. Nos. 4-5. Accordingly, the Court finds that the jurisdictional requirements are satisfied.[2] *Windward*, 2022 WL 875100, at *2.

### B.  Procedural Requirements

Here, Plaintiff requested and received an entry of default in compliance with Rule 55(a) and Local Rule 55.1. Dkt. Nos. 6-7. Plaintiff then filed the present Motion in accordance with

---

[2] Venue is also proper in this District, as it is where Defendants allegedly reside and where a substantial part of relevant events allegedly occurred. 28 U.S.C. § 1391; Dkt. No. 1 at ¶ 16.

Rule 55(b) and Local Rule 55.2. Dkt. No. 8. The Motion does not include a certificate of service demonstrating that Defendants received the Motion. *See generally id.* But because Defendants were served at the commencement of this action and have not "appeared personally or by a representative," Fed. R. Civ. P. 55(b)(2), Plaintiff was not required to effectuate further service with respect to the Motion. *See, e.g., Alston v. City of New York*, No. 22-cv-5395, 2024 WL 4100175, at *5 (E.D.N.Y. Sept. 5, 2024) ("This limitation in the rule is based on the common-sense assumption that if a party has ignored service of a summons and complaint, a plaintiff does not have to chase him down with subsequent notices to see if he has changed his mind."), *appeal filed*, No. 24-2521 (2d Cir. Sept. 25, 2024); *Rove LLC v. Antonio168*, No. 20-cv-02124, 2023 WL 6796034, at *3 n.4 (S.D.N.Y. Oct. 13, 2023) (similar). Accordingly, the Court finds that Plaintiff has satisfied the procedural requirements for seeking a default judgment. *Windward*, 2022 WL 875100, at *2.

### C. Liability as a Matter of Law

"To enter a default judgment, a district court must determine whether—after taking all well-pleaded allegations as true and making reasonable inferences in the plaintiff's favor—the plaintiff's 'allegations establish . . . liability as a matter of law.'" *Henry v. Oluwole*, 108 F.4th 45, 55 (2d Cir. 2024) (alteration in original) (first quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); and then citing *Mickalis*, 645 F.3d at 137 n.23); *see also Moore v. Booth*, 122 F.4th 61, 69 (2d Cir. 2024) ("[W]e have explained that 'prior to entering [a] default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.'") (second alteration in original) (quoting *Mickalis*, 645 F.3d at 137).

### 1. FLSA Claims Generally

Plaintiff's first FLSA claim is that he was not paid minimum wage from January 2023 through July 2023 and from May 2024 through October 2024. Dkt. No. 1 at ¶¶ 47-48. Plaintiff's second FLSA claim is that he was not paid overtime wages from August 2023 through October 2024. *Id.* at ¶¶ 59-60.

"To establish liability under the FLSA, a 'plaintiff must prove the following: (1) the defendant is an employer subject to . . . [the] FLSA; (2) the plaintiff is an 'employee' within the meaning of . . . [the] FLSA; and (3) the employment relationship is not exempted from . . . [the] FLSA.'" *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 366 (E.D.N.Y. 2022) (alterations in original) (quoting *Payamps v. M&M Convenience Deli & Grocery Corp.*, No. 16-cv-4895, 2018 WL 3742696, at *4 (E.D.N.Y. May 18, 2018)). As detailed below, Plaintiff's allegations and affidavit fail to establish that he was an employee of any Defendant for purposes of the FLSA.[3]

"The FLSA defines 'employee' by tautology: an 'individual employed by an employer.'" *Wang v. Hearst Corp.*, 877 F.3d 69, 72 (2d Cir. 2017) (quoting 29 U.S.C. § 203(e)(1)). "In light of the definition's circularity, courts have endeavored to distinguish between employees and independent contractors based on factors crafted to shed light on the underlying economic reality of the relationship." *Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 139 (2d Cir. 2017). As

---

[3] Largely for the reasons detailed below, the face of the Complaint indicates that Plaintiff's role was akin to that of an outside salesperson. *See, e.g., Brito v. Marina's Bakery Corp.*, No. 19-cv-00828, 2022 WL 875099, at *7 (E.D.N.Y. Mar. 24, 2022) ("The FLSA does not extend minimum wage and overtime protections to 'any employee employed in a bona fide executive, administrative, or professional capacity . . . or in the capacity of outside salesman.'") (alteration in original) (quoting 29 U.S.C. § 213(a)(1)); *Choi v. SD Tools, Inc.*, No. 19-cv-2008, 2024 WL 4989224, at *5 (E.D.N.Y. Dec. 5, 2024) ("[A]n outside salesman is an employee whose 'primary duty' is 'making sales' or 'obtaining orders or contracts,' and who is 'customarily and regularly engaged away from' the employer's premises in that effort.") (citations omitted). Given the other deficiencies with Plaintiff's FLSA claim, however, the Court does not determine whether an exemption from the FLSA also applies here.

9

relevant here, the Second Circuit has identified five factors relevant to determining whether workers are employees or independent contractors under the FLSA:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Franze v. Bimbo Bakeries USA, Inc.*, 826 F. App'x 74, 76 (2d Cir. 2020) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988)).  However, "[t]hese factors are merely aids to the analysis" and "are helpful only insofar as they elucidate the 'economic reality' of the arrangement at issue[.]"  *Saleem*, 854 F.3d at 139-40 (citations omitted).

Evaluating Plaintiff's claims under this economic reality test makes clear that Plaintiff has not adequately alleged that he was an employee of any Defendant for purposes of the FLSA.  For example, Plaintiff alleges that prior to when he met David at a casino in January 2023, federal contracts were not integral to Capri's business.  Dkt. No. 1 ¶¶ 17-18.  Plaintiff alleges that he and "David formed their business relationship without any written agreement[,]" *id.* at ¶ 19, and that Plaintiff was "to establish and manage their federal contracting business," *id.* at ¶ 2.[4]  The alleged nature of Plaintiff's work in this new business venture indicates that Plaintiff was an independent contractor, and not an employee, under the FLSA.  *Cf. James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 321 n.9 (E.D.N.Y. 2012) ("To the extent the Amended Complaint can be read as asserting a claim for 'unpaid wages, commissions and bonuses' . . . , such a claim will be treated

---

[4] While the Complaint implies that a relationship exists between David DiMeo, Capri, and Pio DiMeo, it does not provide any specific factual allegations concerning such a relationship.  *See generally* Dkt. No. 1.  The Complaint also contains limited factual allegations specific to any Defendant, beyond those that have already discussed, *see supra* Section II.A-B.  For example, the only individualized allegation against Pio DiMeo is that this person resides in New York state.  Dkt. No. 1 at ¶ 14.

as part of plaintiff's state law claims for breach of contract and unjust enrichment.") (quoting *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 508 n.4 (E.D.N.Y. 2011)).

So does Plaintiff's continued work for others during his alleged employment with this new venture. *Compare* Dkt. No. 1 at ¶ 27 ("Plaintiff negotiated . . . a $350.00 per week stipend after explaining that he needed to reduce other work commitments to focus on Capri."), *with Saleem*, 854 F.3d at 141-42 ("[W]hen an individual is able to draw income through work for others, he is less economically dependent on his putative employer. This lack of control, while not dispositive, weighs in favor of independent contractor status.") (collecting cases).

Plaintiff also had a significant opportunity for profit in this new venture. Foremost, Plaintiff alleges that he was responsible for "evaluating business opportunities;" "identify[ing] target markets;" and was entitled to receive "a 30% commission" for all resulting contracts that he obtained. Dkt. No. 1 at ¶¶ 21, 24; *see also Franze*, 826 F. App'x at 78 ("[Plaintiffs'] ability to solicit new (albeit smaller) customers and modify their territories to increase profits, weigh in favor of finding that they were independent contractors."). And Plaintiff declares that, from May 2024 through October 2024, he "won, delivered, invoiced, and collected on several deals" totaling more than $1.3 million, but "was not paid the agreed-upon 30% commission[.]" Dkt. No. 8-1 at ¶ 10. In addition to this commission, Plaintiff also "requested and received a cash advance due to personal expenses" in July 2023, Dkt. No. 1 at ¶ 25; negotiated "a $350.00 per week stipend" beginning in August 2023, *id.* at ¶ 27; and was owed a further "$3,500 in consultant pay" in connection with an event planning contract in May 2024, *id.* at ¶ 36; Dkt. No. 8-1 at ¶ 9. In short, Plaintiff's opportunity for profit in this new business venture indicates that he was an independent contractor under the FLSA.

Similarly, Plaintiff's allegations that this new venture relied on his own skill and initiative in identifying and pursuing business opportunities, *see, e.g.,* Dkt. No. 1 at ¶¶ 21, 32, further suggest that he was an independent contractor under the FLSA, *see Franze*, 826 F. App'x at 78 ("For many of the same reasons discussed in relation to [plaintiffs]' opportunities for profit or loss, the third [ ] factor – 'the degree of skill and independent initiative required to perform the work' – favors independent contractor status because [plaintiffs]' distribution businesses required substantial independent initiative and business management skills not provided by [defendant].").

As for the tasks Plaintiff alleges that he performed from January 2023 through October 2024, *see, e.g.,* Dkt. No. 1 at ¶¶ 21, 32, these appear largely self-directed and performed on his own schedule. The Second Circuit has previously "singled out schedule flexibility as a factor weighing in favor of independent contractor status because setting one's own hours demonstrates a lack of control by the putative employer and initiative on behalf of the worker." *Franze*, 826 F. App'x at 77 (citing *Saleem*, 854 F.3d at 146-48). And Plaintiff declares that from January 2023 through March 2023, he "was asked to produce work which required 15-20 hours of effort[,]" Dkt. No. 8-1 at ¶ 7; from April 2023 through July 2023, he "was asked to produce work which required 40-60 hours of effort[,]" *id.* at ¶ 8; from August 2023 through March 2024, he "**was asked to produce work which required 10-20 hours of overtime per month**[,]" *id.* at ¶ 13; "[i]n April and May 2024, I secured a deal to perform event planning . . . . [d]uring this period I worked 30 hours of overtime per month**[,]" *id.* at ¶ 14; and "[i]n June 2024, I secured a deal to supply scalp cooling equipment nationally . . . . **[t]his required 40 hours of overtime per month from June 2024 through September 2024**[,]" *id.* at ¶ 15. Plaintiff's ability to determine his own schedule each month during his alleged employment indicates that he was an independent contractor under the FLSA. *See, e.g., Saleem*, 854 F.3d at 146 ("Here, as always with the 'economic reality' inquiry,

12

it is not merely that Plaintiffs nominally could set their own schedules, but also that they actually did so.") (citation omitted).

The permanence or duration of Plaintiff's working relationship with one or more Defendants, which is alleged to have arisen at a casino poker game, appears minimal. Dkt. No. 1 at ¶ 17. For example, Plaintiff suggests that he worked at least forty hours a week from October 2023 through March 2024. *Id.* at ¶ 32. But Plaintiff does not contend that he obtained any contracts during this time, *see, e.g.,* Dkt. No. 8-1 at ¶¶ 9-10; Dkt. No. 8-4 at 3-5. And, given the absence of any alleged discussions with any Defendant during these particular months, *see generally* Dkt. No. 1 at ¶¶ 27-36, it is not clear that any Defendant should have been aware of the scope of the work Plaintiff allegedly performed. *See, e.g., Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 364 (2d Cir. 2011) ("[A] plaintiff establishes a violation of the FLSA by proving that he performed uncompensated work of which his employer was or should have been aware."); *Chase v. MADICORP*, No. 23-cv-00436, 2024 WL 841266, at *3 (N.D.N.Y. Feb. 28, 2024) ("Generally, to establish liability under the FLSA 'a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work.'") (quoting *Zhang v. Ichiban Grp., LLC*, No. 17-cv-148, 2023 WL 6122847, at *4 (N.D.N.Y. Sept. 19, 2023)). Similarly, Plaintiff does not appear to allege any conversations with any Defendant between the May 2024 event and October 2024. *See, e.g.,* Dkt. No. 1 at ¶¶ 33-41. Thus, the nature of the working relationship for most of the period relevant to Plaintiff's claims also indicates that he was an independent contractor.

Finally, Plaintiff provides no non-conclusory factual allegations to support his legal conclusion that "Defendants exercised control over Plaintiff's work[.]"[5] Dkt. No. 1 at ¶ 20; *see also id.* at ¶¶ 46, 58. To the extent his allegations could nonetheless be construed as well-pled, they fail to plausibly suggest an economic reality consistent with an employment relationship under the FLSA. *See, e.g., Saleem*, 854 F.3d at 139-40. In short, the nature of Plaintiff's work and the absence of any plausible allegations of control over it by any Defendant further indicate that Plaintiff was an independent contractor under the FLSA.

### 2. FLSA Overtime Claim

Even if Plaintiff had sufficiently alleged an employment relationship with any Defendant for purposes of the FLSA, his overtime claim still fails. As suggested by Plaintiff's description of his overtime hours on a monthly basis, *see, e.g.,* Dkt. No. 8-1 at ¶¶ 13-15, the Complaint does not plausibly allege that Plaintiff worked more than forty hours in any given week. The Complaint merely alleges, in conclusory fashion, that Plaintiff sometimes worked more than forty hours a

---

[5] As for the supposed control exerted by "Defendants" the only specific factual allegation from January 2023 through October 2024 appears to be that Plaintiff lost email access to an unspecified email account in October 2024. *Id.* at ¶ 39. This does not plausibly allege that "Defendants" controlled Plaintiff's work prior to that time. *See generally* Dkt. No. 1. Plaintiff's allegations regarding the nature and cadence of his work, *see, e.g., id.* at ¶¶ 22, 32, 34; that he negotiated his commission, weekly stipend, a cash advance, and additional consultant pay with Defendants, *see, e.g., id.* at ¶¶ 24, 25, 27, 36; and that no Defendant maintained any employment records, *see, e.g., id.* at ¶¶ 19, 100; similarly indicate that any control Defendants may have exerted over Plaintiff was insufficient to render them employers under the FLSA. *See, e.g., Kolonziaa v. Allied Cmty. Res., Inc.*, No. 25-1034-cv, 2026 WL 707268, at *2 (2d Cir. Mar. 13, 2026) (summary order) (stating that courts have used certain factors to "'examine the degree of formal control exercised over a worker,' 'specifically, whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.") (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142-43 (2d Cir. 2008)). Thus, the Complaint also does not provide a factual basis to find that any Defendant was his employer for purposes of the FLSA. *See generally Irizarry v. Catsimatidis*, 722 F.3d 99, 104-05 (2d Cir. 2013).

week. *See, e.g.,* Dkt. No. 1 at ¶ 32 (alleging that from August 2023 through May 2024, "Plaintiff sometimes worked in excess of forty (40) hours per week"); *id.* at ¶ 37 (alleging that from May 2024 through October 2024, "Plaintiff continued to work at times more than full-time hours"); *id.* at ¶ 59 ("Beginning in August 2023, Plaintiff sometimes worked in excess of forty (40) hours per week . . . . This intensive work schedule continued throughout October 2024.").

The Second Circuit, however, "has demanded that plaintiffs provide some degree of 'specificity' in order to sufficiently plead an FLSA overtime claim." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 114 (2d Cir. 2023) (citation omitted). Plaintiff's conclusory allegations contain no such specificity. *Compare* Dkt. No. 1 at ¶¶ 32, 37, 59, *with Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013) ("[Plaintiff] alleged only that in 'some or all weeks' she worked more than 'forty hours' a week without being paid '1.5' times her rate of compensation, Compl. ¶ 24, no more than rephrasing the FLSA's formulation specifically set forth in section 207(a)(1). Whatever the precise level of specificity that was required of the complaint, [plaintiff] at least was required to do more than repeat the language of the statute."); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) ("These allegations . . . raise the possibility that Plaintiffs were undercompensated in violation of the FLSA . . . ; however, absent any allegation that Plaintiffs were scheduled to work forty hours in a given week, these allegations do not state a plausible claim for such relief. To plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week."). This is an additional reason why Plaintiff has failed to plausibly allege an FLSA overtime claim.[6]

---

[6] Plaintiff's FLSA overtime claim further fails because his alleged $350 weekly stipend, Dkt. No. 1 at ¶ 27, is greater than $290, which is the weekly amount to which he would have been entitled for working forty hours at $7.25 an hour, the applicable federal minimum wage. 29 U.S.C.

15

* * *

For all of these reasons, the Court finds that Plaintiff has failed to state an FLSA claim against any Defendant. As a result, Plaintiff's FLSA claims for minimum and overtime wages are dismissed. *Danser v. Bagir Int'l*, 571 F. App'x 54, 55 (2d Cir. 2014) (affirming district court's denial of plaintiff's motion for default judgment and dismissal of plaintiff's complaint).

### 3. New York State Law Claims

The Complaint does not state a viable federal claim and does not provide a basis for diversity jurisdiction. *See, e.g.,* Dkt. No. 1 at ¶¶ 11, 13-14; *see also Dixon v. Int'l Unified Workforce, Inc.*, No. 18-cv-7191, 2020 WL 6140054, at *4 (E.D.N.Y. Sept. 1, 2020) ("A court 'may decline to exercise supplemental jurisdiction over' state-law claims among nondiverse parties where it 'has dismissed all claims over which it has original jurisdiction.'") (quoting 28 U.S.C. § 1367(c)). Given the nature of Plaintiffs' claims, no other basis for original jurisdiction is apparent. *See generally* Dkt. No. 1.

Absent such jurisdiction, and after considering the relevant factors, the Court declines to exercise supplemental jurisdiction over Plaintiff's claims under New York State law. *Lundy*, 711 F.3d at 117-18; *see also Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18-cv-5624, 2020 WL 5105063, at *3 (E.D.N.Y. Aug. 31, 2020) ("[A] court may decline to exercise supplemental jurisdiction over state law claims at the default judgment stage if it denies default judgment as to all federal claims—so long as doing so serves 'judicial economy, convenience, fairness and

---

§ 206(a)(1). As a result, for most of the relevant time period, Plaintiff has not plausibly alleged that he was uncompensated for time working in excess of forty hours. *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) ("We conclude that in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.") (citing 29 U.S.C. § 207(a)(1)).

16

comity.'") (quoting *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998)); *Yang v. Zhou's Yummy Rest., Inc.*, No. 19-cv-5203, 2023 WL 2347885, at *6 (E.D.N.Y. Mar. 3, 2023) ("'[D]eclining to exercise supplemental jurisdiction at this stage just means I choose not to decide the merits of plaintiff's NYLL [New York Labor Law] claims against the corporate defendant in this opinion to avoid '[n]eedless decisions of state law.''") (final alteration in original) (citations omitted) (denying motion for default judgment, dismissing FLSA claims, and declining to exercise supplemental jurisdiction over New York state law claims).

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's Motion, Dkt. No. 8, is **DENIED**, as set forth in Section IV of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Plaintiff's Complaint, Dkt. No. 1, is **DISMISSED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules and close this case.

**IT IS SO ORDERED.**

Dated: March 26, 2026
       Albany, New York

Anne M. Nardacci
U.S. District Judge

17